**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

HAROLD B. GILBERT, *et al.*,

        Plaintiffs,

        v.

HEATHER A. WILSON, Secretary of the Air Force,

        Defendant.

Civil Action No. 14-1364 (BAH)

Chief Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

The plaintiffs, eleven former Air Force officers who retired or separated from active duty between 1990 and 1998 (collectively, "the plaintiffs"), seek judicial review of the denial of their applications for retrospective promotion by the Air Force Board for Correction of Military Records ("AFBCMR" or "the Board"). The Board determined that each application was submitted well after the applicable three-year limitations period, declined to waive that limitations period, and dismissed the plaintiffs' applications as untimely. The plaintiffs then initiated this lawsuit against the Secretary of the Air Force, seeking a declaratory judgment that the Board's decision not to waive the applicable limitations period was in error.[1] After this Court held that the Board's decision not to waive the limitations period is subject to judicial review, *Gilbert v. James* ("*Gilbert I*"), 134 F. Supp. 3d 42, 58 (D.D.C. 2015), the case was stayed to allow the Board to conduct *de novo* reconsideration of the plaintiffs' claims, *Gilbert v. James* ("*Gilbert II*"), No. 14-cv-1364, 2016 WL 10721864, *3 (D.D.C. Jan. 4, 2016). The Board again denied the plaintiffs' applications as untimely, and the parties filed cross-motions for

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes as defendant the current Secretary of the Air Force, Heather A. Wilson, for former Secretary Deborah Lee James.

summary judgment. Def.'s Mot. Summ. J. ("Def.'s Mot."), ECF No. 37; Pls.' Cross-Mot. Summ. J. ("Pls.' Mot."), ECF No. 38. For the reasons set out below, the Board's decision was neither arbitrary nor capricious and, accordingly, the defendant's motion is granted while the plaintiffs' motion is denied.

## I.   BACKGROUND

The statutory framework and legislative history of the relevant statutes are laid out fully in this Court's previous Memorandum Opinion on the defendant's motion to dismiss. *See Gilbert I*, 134 F. Supp. 3d at 43–46. The salient points of that discussion are repeated here.

### A.   Statutory Framework

The Secretary of the Air Force ("the Secretary") is authorized to convene promotion selection boards to recommend active-duty officers for promotion. *See* 10 U.S.C. § 611. Following an initial promotion decision, the Secretary is empowered to modify retrospectively a current or former service member's military record when necessary "to correct an error or remove an injustice," *id.* § 1552(a)(1), and is authorized to establish procedures governing such corrections, *id.* § 1552(a)(3)(A). *See also* Air Force Instruction ("AFI") 36-2603, *Air Force Board for Correction of Military Records*, ¶¶ 1–2 (Mar. 5, 2012). Under these procedures, an officer seeking modification of his or her military record must submit an "Application for Correction of Military Record Under the Provisions of Title 10, U.S. Code, Section 1552," called a "DD Form 149," to the Board. *See* AFI 36-2401, *Correcting Officer and Enlisted Evaluation Reports*, Table 1, Row 3 (Feb. 20, 2004), ECF No. 16-1; *see also* AFI 36-2406, *Officer and Enlisted Evaluation Systems*, Table 10.1, Row 3 (Nov. 8, 2016). Generally, such applications must be filed "within three years after discovering the error or injustice," although the Board "may excuse a failure to file within three years after discovery if it finds it to be in the interest of justice." 10 U.S.C. § 1552(b); *see also* AFI 36-2406 ¶ 10.5.1; *id.* ¶ A2.4. To review these

applications, the Secretary is authorized, under 10 U.S.C. § 628, to convene Special Selection

Boards ("SSBs").  SSBs consider petitioning officers' records, together with "a sampling of the

records of those officers of the same competitive category," and make determinations as to

whether each petitioning officer should be recommended for a retrospective promotion.  10

U.S.C. § 628(a)(2), (b)(2); *Antonellis v. United States*, 723 F.3d 1328, 1334 (Fed. Cir. 2013).

In 2001, Congress amended 10 U.S.C. § 628 to provide for judicial review of the

Secretary's decisions to convene, or decline to convene, SSBs and authorized the services to

promulgate regulations addressing, *inter alia*, any "time limits applicable to the filing of an

application for [consideration by an SSB]."  National Defense Authorization Act for Fiscal Year

2002, Pub. L. No. 107–107, § 503, 115 Stat. 1012, 1084 (2001); *see also* 10 U.S.C. § 628(g)–(j).

Pursuant to this newly granted authority, the Air Force promulgated an administrative limitations

period that parallels the statutory limitations period found in 10 U.S.C. § 1552(b).  Under these

regulations, applications for record corrections must be submitted to the Board "within 3 years

after the error or injustice [giving rise to the application] was discovered, or, with due diligence,

should have been discovered."  AFI 36-2603 ¶ 3.5.  "An application filed later is untimely and

may be denied by the Board on that basis," *id.*, but the Board "may excuse untimely filing in the

interest of justice," *id.* ¶ 3.5.1.

## B.     The Plaintiffs' Claims

While serving on active duty in the Air Force between 1990 and 1998, each of the

plaintiffs was considered by at least one promotion selection board and not selected for

promotion.  Am. Compl. ¶¶ 15–25, ECF No. 11.  During this period, the military services

provided certain equal opportunity instructions to various boards charged with making personnel

decisions, including promotions, early retirement, and selective retentions.  Def.'s Mem. Supp.

Mot. Dismiss Pls.' Am. Compl. ("Def.'s Mem. Mot. Dismiss") at 3, ECF No. 13.  In particular,

the Air Force provided personnel boards with a Memorandum of Instruction ("MOI") that included language directing the boards to be sensitive to race and gender when evaluating officers. *Id.*; Am. Compl. ¶¶ 27–28.[2]

In 2002, the Federal Circuit held that the Air Force's use of this MOI to help guide the selection of officers for involuntary termination pursuant to a 1993 reduction-in-force mandate constituted a racial and gender classification subject to heightened scrutiny under the equal protection guarantee of the Fifth Amendment. *Berkley v. United States*, 287 F.3d 1076, 1091 (Fed. Cir. 2002).[3] Since that time, and relying on *Berkley*, the Board has opined that the MOI language addressing race and gender considerations was unconstitutional. Am. Compl. ¶¶ 30–31; *see also Ricks v. United States*, 65 Fed. Cl. 826, 831 n.6 (2005) (noting that "[t]he Government does not oppose the entry of a finding by this Court that the instructions were unlawful for those reasons stated in *Berkley*") (internal quotation marks, citation, and alteration omitted). Following *Berkley*, many current and former service members sought reevaluation of their military records without the equal opportunity MOI. *See generally, e.g.*, *Christian v. United States*, 337 F.3d 1338 (Fed. Cir. 2003) (Army selective early retirement board); *Baker v. United States*, 127 F.3d 1081 (Fed. Cir. 1997) (Air Force selective early retirement board); *Paylor v. Winter*, 600 F. Supp. 2d 117 (D.D.C. 2009) (Navy promotion selection board); *Ricks*,

---

[2]    The MOI read as follows: "Your evaluation of minority and women officers must clearly afford them fair and equitable consideration. Equal opportunity for all officers is an essential element of our selection system. In your evaluation of the records of minority and women officers, you should be particularly sensitive to the possibility that past individual and societal attitudes, and in some instances utilization policies or practices, may have placed these officers at a disadvantage from a total career perspective. The board shall prepare for review by the Secretary and Chief of Staff, a report of minority and women officer selections as compared to the selection rates for all officers considered by the board." Def.'s Mem. Mot. Dismiss at 3 n.1 (citing *Ricks v. United States*, 65 Fed. Cl. 826, 828 (2005)).

[3]    Although the Federal Circuit concluded that the constitutionality of the challenged MOI must be analyzed under heightened scrutiny, the court expressly reserved judgment as to whether the MOI withstood that scrutiny and "what effect, if any, deference to the military would have on the judicial application of strict scrutiny." *Berkley*, 287 F.3d at 1091.

65 Fed. Cl. 826 (Air Force promotion selection board); *Christensen v. United States*, 65 Fed. Cl. 625 (2005) (Air Force selective early retirement board); *Alvin v. United States*, 50 Fed. Cl. 295 (2001) (Air Force selective early retirement board).

For a number of years following *Berkley*, the Board routinely exercised its statutory and regulatory authority to waive the applicable three-year limitations period and regularly convened SSBs to review untimely applications submitted by officers who had been considered by promotion boards operating under the equal opportunity MOI. Am. Compl. ¶¶ 37–38; Def.'s Mem. Mot. Dismiss at 6. At the end of 2011, however, the Board changed course and consistently declined to waive the three-year limitations period when the sole basis for relief asserted by the petitioner was the Air Force's use of the MOI. Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem.") at 2–3, ECF No. 37; Am. Compl. ¶ 41 ("It appears from the records that up to November 28, 2011 *all Berkley* cases were granted by the AFBCMR. After that date *all Berkley* cases were denied.") (emphasis in original). Taking into account the passage of nearly a decade since *Berkley*, and citing its efforts to manage its caseload in conformity with statutory time constraints, the Board concluded that continued waivers of the limitations period for *Berkley* cases were no longer "in the interest of justice." Administrative Record ("AR") at 15, ECF No. 36-2.[4]

Between May 2011 and December 2012, nearly ten years after *Berkley* and more than a decade after each plaintiff had separated from the Air Force, each plaintiff filed a DD Form 149 "asking for a correction of their military record because of their unconstitutional treatment in promotion selection." Am. Compl. ¶ 34. Each plaintiff requested, pursuant to § 628(b), referral of his record-correction request to an SSB so that the SSB could reassess his qualifications for

---

[4] The Administrative Record has been produced in two documents with consecutive pagination. *See* AR Vol. I, ECF No. 36-2; AR Vol. II, ECF No. 36-3. Pages 1 through 400 appear in Volume I, while pages 401 through 799 appear in Volume II. Although not all portions of the AR are cited here, the Court has reviewed the entire Administrative Record in reaching this decision.

promotion and consider him for retrospective promotion without regard to his race and gender. *Id.* ¶¶ 33–35; AR at 18, 85, 157, 233, 303, 376, 449, 516, 583, 654, 723.

The Board denied each plaintiff's request as untimely. *See* AR at 16, 82, 153, 230, 300, 374, 446, 514, 581, 651, 721. While conceding that the plaintiffs were considered by promotion selection boards operating under the equal opportunity MOI, Am. Compl. ¶ 36, the Board declined to waive the statutory limitations period, citing the Board's responsibility to manage its caseload under statutory time constraints, its determination that the plaintiffs failed to engage in due diligence in pursuing their applications, and its conclusion that the plaintiffs' significant delay in filing their applications rendered retrospective review of their records by an SSB impractical. *Id.* ¶¶ 39, 45; *see also, e.g.*, AR at 14–15. The plaintiffs then sought reconsideration of these determinations, arguing for the first time that the Board acted arbitrarily and capriciously by "refus[ing] to consider similar [ ] precedence" and by refusing to continue granting waivers of the limitations period for petitioners raising *Berkley* claims. AR at 34. Notably, the plaintiffs identified one case similar to theirs (the "comparator filer's case") in which a waiver was granted, even though that application was filed after the earliest-filed application in this case. *Id.* at 35; Pls.' Mem. Supp. Cross-Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. ("Pls.' Mem.") at 3, ECF No. 38-2. After the Board summarily denied their requests for reconsideration, Am. Compl. ¶ 46, AR at 41, the plaintiffs filed the instant action on August 11, 2014.

On September 22, 2015, this Court granted in part and denied in part the defendant's motion to dismiss for lack of subject-matter jurisdiction, concluding that the Board's "decision not to waive the limitations periods applicable to the plaintiffs' applications to convene SSBs is subject to judicial review under 10 U.S.C. § 628(g)." *Gilbert I*, 134 F. Supp. 3d at 58. This case was stayed, at the defendant's request and over the plaintiffs' objections, on January 4, 2016, "to

allow for reconsideration *de novo* by the Air Force Board for Correction of Military records, of the plaintiffs' petitions," *Gilbert II*, 2016 WL 10721864, at *3, which would enable the Board to consider, for the first time, the plaintiffs' argument that the Board had disregarded precedent when changing its waiver policy, *see id.* at *2. On or about May 13, 2017, the plaintiffs received word of the Board's decisions on reconsideration, again denying relief for each plaintiff. *See* Joint Status Report at 1, ECF No. 34. Regarding the precedent argument, the Board noted that "the Board relies on the decision date, not the filing date, to set precedent for the Board's later decision" and that "once the *decision* was made to deny relief, the Board has consistently followed that precedent." AR at 7–8. The parties then filed the pending cross-motions for summary judgment, which are now ripe for review.

## II.    LEGAL STANDARD

### A.    Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, summary judgment may be granted when the court finds, based on the pleadings, depositions, affidavits, and other factual materials in the record, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c); *see also Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (per curiam); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine issue of material fact exists if the evidence, 'viewed in a light most favorable to the nonmoving party,' could support a reasonable jury's verdict for the non-moving party." *Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 215 (D.C. Cir. 2013) (quoting *McCready v. Nicholson,* 465 F.3d 1, 7 (D.C. Cir. 2006)).

In APA cases such as this one, involving cross-motions for summary judgment, "the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (footnote omitted)

(collecting cases). Thus, this Court need not and ought not engage in lengthy fact finding, since "[g]enerally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996); *see also Lacson v. U.S. Dep't of Homeland Sec.*, 726 F.3d 170, 171 (D.C. Cir. 2013) (noting in an APA case that "determining the facts is generally the agency's responsibility, not ours"). As a general rule, judicial review is limited to the administrative record, since "[i]t is black-letter administrative law that in an [Administrative Procedure Act] case, a reviewing court should have before it neither more nor less information than did the agency when it made its decision." *CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014) (internal quotation marks omitted; second alteration in original); *see also* 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party . . . ."); *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (noting that when applying arbitrary and capricious standard under the APA, "[t]he focal point for judicial review should be the administrative record already in existence . . . .") (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)).

## B.     Administrative Procedure Act

Under the APA, a reviewing court must set aside a challenged agency action that is found to be, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A); "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," *id.* § 706(2)(C); or "without observance of procedure required by law," *id.* § 706(2)(D); *see also Otis Elevator Co. v. Sec'y of Labor*, 762 F.3d 116, 120–21 (D.C. Cir. 2014) (citing *Fabi Constr. Co. v. Sec'y of Labor*, 370 F.3d 29, 33 (D.C. Cir. 2004)). The arbitrary or capricious provision, under subsection 706(2)(A), "is a catchall, picking up administrative misconduct not covered by the other more specific paragraphs" of the APA.

*Ass'n of Data Processing Serv. Orgs., Inc. v. Bd. of Governors of Fed. Reserve Sys.* ("*ADPSO*"), 745 F.2d 677, 683 (D.C. Cir. 1984) (Scalia, J.).

To pass arbitrary and capricious muster, "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.* ("*State Farm*"), 463 U.S. 29, 43 (1983) (internal quotation marks omitted). As the D.C. Circuit has explained, a party challenging an agency action as arbitrary and capricious "must show the agency action is not a product of reasoned decisionmaking." *Van Hollen, Jr. v. FEC*, 811 F.3d 486, 495 (D.C. Cir. 2016). "This is 'a heavy burden,' since *State Farm* entails a 'very deferential scope of review' that forbids a court from 'substitut[ing] its judgment for that of the agency.'" *Id.* (quoting *Transmission Access Policy Study Grp. v. FERC*, 225 F.3d 667, 714 (D.C. Cir. 2000)); *see also Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1135 (D.C. Cir. 2014) (same); *Judulang v. Holder*, 565 U.S. 42, 52–53 (2011) (same). Particularly when "an agency has acted in an area in which it has 'special expertise,' the court must be particularly deferential to [the agency's] determinations." *Sara Lee Corp. v. Am. Bakers Ass'n Ret. Plan*, 512 F. Supp. 2d 32, 37 (D.D.C. 2007) (quoting *Bldg. & Constr. Trades Dep't, AFL-CIO v. Brock*, 838 F.2d 1258, 1266 (D.C. Cir. 1988)). That said, "courts retain a role, and an important one, in ensuring that agencies have engaged in reasoned decisionmaking." *Judulang*, 565 U.S. at 53. Simply put, "the agency must explain why it decided to act as it did." *Butte Cty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010).

The D.C. Circuit has summarized the circumstances under which an agency action would normally be "arbitrary and capricious" to include "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the

problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Pharm. Research & Mfrs. of Am. v. FTC*, 790 F.3d 198, 209 (D.C. Cir. 2015) (quoting *State Farm*, 463 U.S. at 43). Thus, when an agency "has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action." *Cty. of Los Angeles v. Shalala,* 192 F.3d 1005, 1021 (D.C. Cir. 1999) (quoting *BellSouth Corp. v. FCC*, 162 F.3d 1215, 1222 (D.C. Cir. 1999)); *see also Select Specialty Hosp.-Bloomington, Inc. v. Burwell*, 757 F.3d 308, 312 (D.C. Cir. 2014) (noting that when "an agency's failure to state its reasoning or to adopt an intelligible decisional standard is [ ] glaring [ ] we can declare with confidence that the agency action was arbitrary and capricious") (quoting *Checkosky v. SEC*, 23 F.3d 452, 463 (D.C. Cir. 1994)); *Amerijet Int'l, Inc. v. Pistole*, 753 F.3d 1343, 1350 (D.C. Cir. 2014) ("[A] fundamental requirement of administrative law is that an agency set forth its reasons for decision; an agency's failure to do so constitutes arbitrary and capricious agency action.") (internal quotation marks omitted). "[C]onclusory statements will not do; an agency's statement must be one of *reasoning*." *Amerijet Int'l*, 753 F.3d at 1350 (internal quotation marks omitted; emphasis in original).

## C. Judicial Review of the Decision Not to Convene an SSB

Congress has provided explicit instructions on the scope of judicial review applicable to challenges, such as the instant one, to a determination by the Secretary of a military department declining to convene an SSB. Under the standard adopted in 10 U.S.C. § 628(g), which "largely echoes" the APA's arbitrary and capricious standard, *Homer v. Roche*, 226 F. Supp. 2d 222, 225 (D.D.C. 2002), the court may set aside the Secretary's determination not to convene an SSB only if the court finds the determination to be (1) "arbitrary or capricious;" (2) "not based on substantial evidence;" (3) "a result of material error of fact or material administrative error;" or

10

(4) "otherwise contrary to law."  10 U.S.C. § 628(g)(1)(A); *see also Roberts v. United States*, 741 F.3d 152, 158 (D.C. Cir. 2014).  This standard is applied "in an 'unusually deferential' manner because it relates to the personnel decisions of the military."  *Paylor*, 600 F. Supp. 2d at 124 (quoting *Miller v. Dep't of Navy*, 476 F.3d 936, 938 (D.C. Cir. 2007)); *see also Orloff v. Willoughby*, 345 U.S. 83, 94 (1953) ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army matters as the Army must be scrupulous not to intervene in judicial matters.").

Adjudication of these claims thus "requires the district court to determine only whether the Secretary's decision making process was deficient, not whether h[er] decision was correct." *Kreis v. Sec'y of Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989).  To satisfy this "modest scrutiny," the Board "must give a reason that a court can measure against the arbitrary or capricious standard of the APA."  *Roberts*, 741 F.3d at 158 (quoting *Kreis*, 866 F.2d at 1514–15) (internal quotation marks and alterations omitted).  Under this deferential standard, "[p]erhaps only the most egregious decisions may be prevented," but "[e]ven if that is all the judiciary can accomplish, in reconciling the needs of military management with Congress's mandate for judicial review, then do it we must."  *Kreis*, 866 F.2d at 1515.

## III.  DISCUSSION

In this case, the plaintiffs aver that "the Board's *de novo* determinations were an abuse of discretion and arbitrary and capricious" and that, even if the plaintiffs' claims were untimely, "*stare decisis* dictates granting a waiver."  Pls.' Mem. at 3–4 (capitalization omitted). Specifically, the plaintiffs claim that the Board improperly relied "on the publicity surrounding the *Berkley* case as a reason that Plaintiffs should have been aware of the issue in their promotion boards" and then "fail[ed] to address the precedent of eight years of granting waivers" of the

limitations period.  *Id.*  For the reasons that follow, the Board adequately explained its decision to deny the plaintiffs' claims as untimely and did not arbitrarily or capriciously ignore precedent in declining to waive the limitations period in this case.

## A.    The Board Articulated a Reasonable Explanation for Denying the Plaintiffs' Claims as Untimely

The plaintiffs claim that the Board acted arbitrarily and capriciously in denying the plaintiffs' applications as untimely.  Although the plaintiffs' nonselections for promotion occurred between 1990 and 1998, the plaintiffs aver that they first learned about the improper MOI informally, "from word of mouth," between November 2010 and December 2012.  Am. Compl. ¶¶ 33, 45; *see also* AR at 17–19, 83–86, 155–58, 231–36, 301–04, 375–77, 448–50, 515–17, 582–84, 653–57, 723.  Thus, the plaintiffs claim, their applications—filed between May 2011 and December 2012, Am. Compl. ¶ 34—were timely filed "within three years after discovering the error or injustice."  10 U.S.C. § 1552(b); Pls.' Mem. at 2.  In response, the defendant argues that given the "highly publicized" nature of the *Berkley* decision, "the Board reasonably determined that plaintiffs should have discovered the alleged error or injustice, the improper memorandum of instruction applicable at the time, more than three years before plaintiffs filed their applications with the Board."  Def.'s Opp'n Pls.' Cross-Mot. Summ. J. & Reply Supp. Def.'s Mot. Summ. J. ("Def.'s Opp'n") at 2, ECF No. 39.

In this analysis, "the district court [is required] to determine only whether the Secretary's decision making process was deficient, not whether h[er] decision was correct."  *Kreis*, 866 F.2d at 1511.  No deficiency is present here.  The Board's reasoning largely rested on the "highly publicized" *Berkley* settlement nearly ten years before the plaintiffs' applications were filed, which led the Board to conclude that "a reasonable date of discovery was more than three years prior to receipt of the application."  AR at 7; *see also id.* at 14–15.  The defendant correctly notes

that after *Berkley*, the military services were involved in numerous lawsuits challenging the equal opportunity instruction. Several of these cases involved the Air Force and promotion selection boards. For example, the plaintiff in *Ricks v. United States*, 65 Fed. Cl. 826 (2005), was unsuccessfully considered for promotion by Air Force promotion selection boards in 1992 and 1993—the same years that plaintiffs Gilbert, Hooper, Dorman, White, Phoebus, and Evans also came before Air Force promotion selection boards. *Id.* at 828; *see also* AR at 11, 78, 149, 296, 509, 717. The 1992 and 1993 promotion boards both used the equal opportunity MOI, and in *Ricks*, the court noted that this instruction "require[d] different treatment of officers under review based on their race and gender." *Ricks*, 65 Fed. Cl. at 828 n.2 (citing *Berkley*, 287 F.3d at 1084– 85). The application at issue in *Ricks* was filed in April 1997, a full fourteen years before the earliest application in this case. *Id.* at 829; *see also* AR at 301 (White). While the issue in *Ricks* was the "appropriate remedy to redress Plaintiff's involuntary dismissal from the Air Force," *Ricks*, 65 Fed. Cl. at 827, and not whether a waiver of the limitations period was warranted, that case undeniably involved a retired Air Force officer who was challenging his past nonselection for promotion based on the equal opportunity MOI—just as the plaintiffs are attempting to do here, nearly thirteen years after the decision in *Ricks*.

Similarly, in *Baker v. United States*, 127 F.3d 1081 (Fed. Cir. 1997), a class of retired Air Force colonels challenged their selection for retirement by an Air Force selective early retirement board ("SERB") that also used the equal opportunity MOI. *Id.* at 1082. The specific SERB at issue convened in January 1992, the same year that plaintiffs Gilbert, Hooper, White, and Phoebus came before promotion selection boards. *Id.*; *see also* AR at 11, 78, 296, 509. The Federal Circuit expressly noted that SERBs were using the same MOI as promotion selection boards, acknowledging that "[a]t the time, the Air Force had previous experience with promotion

boards, whose tasks had been to decide which officers, among those eligible, would be promoted to higher rank"; that "[t]he promotion boards also acted pursuant to [the MOI]"; and that "[f]or the 1992 SERB, it was decided to use a charge that had been developed for use by promotion boards." *Baker*, 127 F.3d at 1083. The *Baker* plaintiffs filed suit in July 1994, some seventeen years before the applications at issue in this case were filed. *Id.* at 1084. Still other cases discussed *Berkley*'s applicability to personnel boards throughout the services, indicating that other similarly situated plaintiffs were well aware of *Berkley* and its potential impact on their applications. *See generally, e.g.*, *Christian*, 337 F.3d 1338 (Army selective early retirement board); *Paylor*, 600 F. Supp. 2d 117 (Navy promotion selection board); *Christensen*, 65 Fed. Cl. 625 (Air Force selective early retirement board); *Alvin*, 50 Fed. Cl. 295 (Air Force selective early retirement board).

The plaintiffs are correct that they did not qualify for the *Berkley* class and thus would not have received formal notice of their ability to join that class action. *See* Pls.' Mem. at 4.[5] Nevertheless, given the publicity surrounding the *Berkley* decision and the number of cases across the services involving different types of personnel boards, the Board did not act arbitrarily or capriciously in determining that the plaintiffs should have discovered the error more than three years before filing their applications. Rather, the Board explained in each case that "the Air Force settled the *Berkley* case 10 years ago and the applicant has not demonstrated the error was not discoverable," especially in light of the numerous cases filed that raised the same or similar issues. AR at 14. Indeed, "given the magnitude of the [*Berkley*] settlement agreement and its far-reaching, resultant impact on such a large cadre of officers, it was widely publicized through

---

[5]     The *Berkley* class included "all commissioned officers of the United States Air Force who were considered by and selected for involuntary separation from the United States Air Force by the [Fiscal Year 1993 Reduction in Force] Board." *Berkley v. United States*, 45 Fed. Cl. 224, 226 (1999). The plaintiffs in this action were considered by promotion selection boards, not reduction-in-force boards, in various years ranging from 1990 to 1998. *See* Am. Compl. ¶¶ 15–25.

a number of nonofficial websites on the internet." *Id.* Contrary to the plaintiffs' suggestion that the Board had some obligation to notify service members of the *Berkley* settlement, *see* Pls.' Mem. at 4, the Board was not required to expend its limited resources to identify and contact every service member who may have been affected by the MOI. Nevertheless, as evidenced by the volume of post-*Berkley* case law, the *Berkley* settlement was of such import that knowledge of the MOI and its use in selection boards between 1990 and 1998 was prevalent across the services. *See generally, e.g.*, *Christian*, 337 F.3d 1338 (challenging use of the MOI before Army selective early retirement board); *Baker*, 127 F.3d 1081 (same, before Air Force selective early retirement board); *Paylor*, 600 F. Supp. 2d 117 (same, before Navy promotion selection board); *Ricks*, 65 Fed. Cl. 826 (same, before Air Force promotion selection board); *Christensen*, 65 Fed. Cl. 625 (same, before Air Force selective early retirement board); *Alvin*, 50 Fed. Cl. 295 (same, before Air Force selective early retirement board). The Board's reasoning is sound and provides a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

### B. The Board Did Not Act Arbitrarily or Capriciously by Denying Waivers for the Plaintiffs' Claims

The plaintiffs also allege that, if their claims are untimely, the Board acted arbitrarily and capriciously by ignoring relevant precedent and denying waivers of the limitations period. Pls.' Mem. at 2–3. Specifically, the plaintiffs claim that the Board consistently granted relief to similarly situated applicants prior to 2012, Am. Compl. ¶¶ 37, 41, 44, and even granted a waiver for a comparator filer who submitted his application after plaintiff White submitted his application, *id.* ¶¶ 40, 48. Here, however, the Board explained why it was denying waivers to the plaintiffs, why it was treating the plaintiffs' cases differently from the comparator filer's case, and why it changed its approach to waivers in *Berkley* cases.

1.      ***The Board Provided a Reasonable Explanation of Its Decision to Deny
        Waivers in the Plaintiffs' Cases***

The Board's decision not to waive the applicable limitations period amounts to a decision

to adhere rigidly to its own rules. Generally, "the agency's strict construction of a general rule in

the face of waiver requests is insufficient evidence of an abuse of discretion." *Mountain Sols.,*

*Ltd. v. FCC*, 197 F.3d 512, 517 (D.C. Cir. 1999). Rather, an agency's "strict adherence to its

rules" is "permissible unless its reason for refusing to waive a rule is arbitrary, capricious, or 'so

insubstantial as to render that denial an abuse of discretion.'" *Westar Energy, Inc. v. FERC*, 473

F.3d 1239, 1241 (D.C. Cir. 2007) (quoting *Mountain Sols.*, 197 F.3d at 517); *see also Universal*

*City Studios LLLP v. Peters*, 402 F.3d 1238, 1242 (D.C. Cir. 2005) ("[W]e will disturb a denial

of waiver only when the agency's reasons are so insubstantial as to render that denial an abuse of

discretion.") (internal quotation marks omitted).

In this case, the Board articulated sound reasons for denying the plaintiffs' requests for

waivers of the limitations period. The Board explained that the plaintiffs made "no showing that,

through due diligence, [they] would not have become aware of [the *Berkley*] actions years

earlier," especially given the "widely publicized" *Berkley* settlement. AR at 14. In light of the

passage of time since *Berkley*, the Board continued, "correcting a member's records has become

increasingly more difficult" and "[i]t has become nearly impossible to provide an appropriate

remedy since many members are provided supplemental promotion consideration and are

selected for promotion in a somewhat more liberal process where promotion quotas are not

applicable." *Id.* at 15. Moreover, because no plaintiff offered evidence that he "would have

been a selectee had an appropriate MOI been employed during his selection board," the Board

"d[id] not find a sufficient basis to waive the failure to timely file." *Id.* Later, upon *de novo*

reconsideration of the plaintiffs' applications, the Board reiterated that the plaintiffs "ha[d]

offered no plausible reason for the delay in filing the application[s]" and explained that "[t]he 3-year timeliness standard ensures that the Board doesn't spend time on aged cases at the expense of those who have not slumbered on their rights." *Id.* at 8. This explanation is "one of reasoning," *Butte Cty.*, 613 F.3d at 194 (internal quotation marks omitted), that draws "a rational connection between the facts found and the choice made," *State Farm*, 463 U.S. at 43 (internal quotation marks omitted).

## 2. *The Board Did Not Arbitrarily or Capriciously Ignore Precedent*

The plaintiffs focus their argument on the Board's alleged "fail[ure] to address the precedent of eight years of granting waivers" in substantially similar cases. Pls.' Mem. at 3. The D.C. Circuit has recognized that "[a] fundamental norm of administrative procedure requires an agency to treat like cases alike. If the agency makes an exception in one case, then it must either make an exception in a similar case or point to a relevant distinction between the two cases." *Westar Energy*, 473 F.3d at 1241; *see also Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258 (D.C. Cir. 1996) ("An agency must treat similar cases in a similar manner unless it can provide a legitimate reason for failing to do so."); *Hall v. McLaughlin*, 864 F.2d 868, 872 (D.C. Cir. 1989) ("Divergence from agency precedent demands an explanation."). If an agency "glosses over or swerves from prior precedents without discussion it may cross the line from the tolerably terse to the intolerably mute." *Hall*, 864 F.2d at 872 (internal quotation marks omitted). Nevertheless, "this rule of reasoned decisionmaking has limits," and an agency is not required to "grapple with every last one of its precedents, no matter how distinguishable." *Jicarilla Apache Nation v. U.S. Dep't of Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010) (citing *LeMoyne-Owen College v. NLRB*, 357 F.3d 55, 60 (D.C. Cir. 2004)). In addition, the agency "may distinguish precedent simply by emphasizing the importance of considerations not

previously contemplated, and [ ] in so doing it need not refer to the cases being distinguished by name." *Envtl. Action v. FERC*, 996 F.2d 401, 411–12 (D.C. Cir. 1993).

In this case, the plaintiffs aver that the Board failed to distinguish relevant cases in which it had "granted waivers in substantially similar cases for years" and failed to acknowledged that it had "granted a waiver in a case filed after Plaintiff White filed his request." Pls.' Mem. at 3; Pls.' Reply Supp. Cross-Mot. Summ. J. ("Pls.' Reply") at 3, ECF No. 41.[6] Plaintiff White's application was filed on May 1, 2011, and a waiver was denied on February 21, 2012, while the comparator filer's application was filed on May 9, 2011, and a waiver was granted on November 28, 2011. AR at 35. The plaintiffs aver that the only difference between these two cases is that "the Board looked at one later than the other." Pls.' Reply at 3.[7] In addressing this argument, however, the Board explained that the filing date was not dispositive because "the Board relies on the decision date, not the filing date, to set precedent for the Board's later decision." AR at 292. According to the Board, "once the *decision* was made to deny relief, the Board has consistently followed that precedent." *Id.* at 293 (emphasis in original). Indeed, the plaintiffs acknowledge that "up to November 28, 2011, *all Berkley* cases were granted by the AFBCMR," while "[a]fter that date *all Berkley* cases were denied." Am. Compl. ¶ 41; *see also id.* ¶ 44 ("[B]efore November 28, 2011, all cases were granted whereas after November 28, 2011, all cases were denied."). Although plaintiff White filed his application before the comparator filer, his application was processed after the comparator filer's application and therefore was decided under the newer, more rigid approach to waivers. The Board detailed some of the myriad

---

[6]     The plaintiffs raised this argument for the first time in their requests for reconsideration, which the Board summarily denied. *See, e.g.*, AR at 34–39 (White request for reconsideration); *id.* at 41 (White summary denial). Thus, the Board first addressed this precedent argument when it reconsidered the applications *de novo* while this case was stayed.
[7]     The Board's decision in the comparator filer's case is not part of the Administrative Record.

reasons why applications might not be processed in the same order in which they are filed: "how well the application is written/supported, how quickly the advisory is received, staff and panel availability, etc." AR at 293. This is a reasoned and principled explanation for the Board's different treatment of the plaintiffs' cases in comparison to the comparator filer's case.[8]

The plaintiffs' argument primary support for their argument, *Wilhelmus v. Geren*, 796 F. Supp. 2d 157 (D.D.C. 2011), bolsters this conclusion. *Wilhelmus* involved a cadet at the United States Military Academy who was disenrolled after his repeated failure to pass the mandatory Cadet Physical Fitness Test. *See id.* at 158–59. After the plaintiff's separation, the Army determined that he owed the government some $130,000 for failing to fulfill his contractual obligations. *Id.* at 158. The Army Board for the Correction of Military Records ("Army Board") affirmed that determination. *Id.* On review, this Court determined that the Army Board had "entirely failed to distinguish" the plaintiff's case from an earlier case in which the Army "recommended correction of the applicant's record to disallow recoupment" of more than $120,000 in fees owed by a former cadet who also failed the Fitness Test. *Id.* at 163. The Army's only responses to this prior case involving a similarly situated cadet were that "[t]he ABCMR reviews each case individually and is presented before the Board based on its own merit and evidence," "[t]here are no cases that set the standards on how the Board should always vote," and "[t]he decision in [the earlier case] was not a unanimous decision to grant relief." *Id.*

In this case, the defendant has not given such "simple conclusory statements," *id.*, to explain its divergence from precedent. In *Wilhelmus*, the Army Board did not mention any

---

[8] Even if the plaintiffs were correct that adherence to precedent required a waiver for any application filed before the comparator filer's application, that argument would apply only to plaintiff White. White's application was filed on May 1, 2011, which the plaintiffs aver was eight days before the comparator filer submitted his application. AR at 301; Pls.' Reply at 3. The other ten plaintiffs all filed their applications after May 9, 2011, when the comparator filer submitted his application. *See* AR at 17, 83, 155, 231, 375, 448, 515, 582, 653, 723.

change in its approach to the recoupment of fees for similarly situated cadets, did not attempt to distinguish the facts or circumstances of the earlier case, and offered only generalized reasons for its different treatment of the two cases. *Id.* at 163–64. Here, by contrast, the Board acknowledged that the comparator filer's case was "essentially the same" as the plaintiffs' cases. AR at 292. The Board nevertheless explained that it had reconsidered its approach to waivers in *Berkley* cases, and that "once the *decision* was made to deny relief, the Board has consistently followed that precedent." *Id.* at 293 (emphasis in original). The plaintiffs have recognized that consistency. *See* Am. Compl. ¶¶ 41, 44. Unlike the agency's decision in *Wilhelmus*, the Board's "'path may reasonably be discerned' based on the administrative record it created," *Wilhelmus*, 796 F. Supp. 2d at 163 (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974)) (internal citation omitted), and accordingly, the Board did not arbitrarily or capriciously ignore precedent.

### 3.    *The Board Articulated a Reasonable Explanation for Reassessing Its Approach to Waivers in* **Berkley** *Cases*

Although agencies must treat like cases alike, they are also permitted to change course when handling similar cases. *See Rust v. Sullivan*, 500 U.S. 173, 186 (1991) ("An agency is not required to establish rules of conduct to last forever, but rather must be given ample latitude to adapt its rules and policies to the demands of changing circumstances.") (internal quotation marks, citations, and alterations omitted). The "classic direction" for a court reviewing such an agency action is that "'an agency changing its course must supply a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.'" *Hall*, 864 F.2d at 872 (quoting *Greater Boston Television Corp v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970)). If the agency satisfies the court that it "has taken a hard look at the issues with the use of reasons and standards, the court will uphold its findings, though of less than ideal clarity," so

long as "the agency's path may reasonably be discerned." *Greater Boston Television*, 444 F.2d at 851.

The decision here not only distinguished this case from the comparator filer's case but also explained the Board's reasons for modifying its approach to waivers in *Berkley* cases generally. The Board acknowledged that it had, "in the past, gone to great lengths to provide relief to those members affected by the improper MOI but not part of the *Berkley* class," including by waiving the three-year limitations period. AR at 14. "[R]ecent Congressional mandates," however, had "limited the Board's latitude" to grant waivers by requiring the Board to "process 90 percent of its cases within 10 months and to allow the processing of no case to exceed the 18-month point." *Id.* at 14–15. In addition, "correcting a member's records has become increasingly more difficult due to the passage of time" and "[i]t has become nearly impossible to provide an appropriate remedy" given the different promotion considerations that applied to different promotion boards. *Id.* at 15. Thus, the Board concluded in each of the plaintiffs' cases that "it would not be in the interest of justice to waive the untimeliness" present in the plaintiffs' cases. *See id.* at 16, 82, 153, 230, 300, 374, 446, 514, 581, 651, 721. Similar reasoning was repeated in the Board's decisions on reconsideration. *See, e.g.*, *id.* at 8, 75, 146, 221, 293, 367, 440, 506, 573, 644, 714. These explanations amount to "a reasoned analysis for the change," *State Farm*, 463 U.S. at 42, and "are not so manifestly devoid of a factual basis as to allow this court to second guess the agency," *Nat'l Ass'n of Broad. v. FCC*, 740 F.2d 1190, 1212 (D.C. Cir. 1984).

The plaintiffs argued before the Board that these reasons, and in particular, the reliance on congressional mandates, should be discounted because "[t]he Congressional mandate on processing times has been in place for almost ten years" and "[t]he Air Force has had ample time

to add the resources necessary to fulfill the mandate." AR at 35. While that may be so, courts "will not second-guess a reasoned determination by an agency that the advantages of rigidity outweigh the disadvantages in a given procedural circumstance." *Green Country Mobilephone, Inc. v. FCC*, 765 F.2d 235, 237 (D.C. Cir. 1985). The Board implemented a three-year administrative limitations period in 2001 and, in its discretion, decided to grant waivers of that limitations period for approximately a decade. At the end of 2011, the Board again exercised its discretion and decided to enforce the limitations period rigidly, finding that the interest of justice no longer justified waivers in these cases. In the face of the Board's reasoned reconsideration of its approach to waivers in *Berkley* cases, the plaintiffs have not shown that the denials of the requested waivers were arbitrary, capricious, or an abuse of discretion. *See Fla Inst. of Tech. v. FCC*, 952 F.2d 549, 554 (D.C. Cir. 1992) (noting that plaintiffs must convince the court that "the Commission's reasons for its decision were insubstantial, that it arbitrarily deviated from precedent, or that its denial of the requested waiver was otherwise an abuse of discretion").

## IV.     CONCLUSION

For the foregoing reasons, the defendant's Motion for Summary Judgment is GRANTED and the plaintiffs' Cross-Motion for Summary Judgment is DENIED. An appropriate Order accompanies this Memorandum Opinion.

Date: February 27, 2018

_____
BERYL A. HOWELL
Chief Judge